## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **EDWARD COLLINS, individually and as Personal Representative of the Estate of SHEVER COLLINS, deceased,** )<br>)<br>)<br>) | **CASE NO. 0:10-cv-62207** |
| )<br>**Plaintiff,** )<br>**v.** )<br>) | |
| **UDL LABORATORIES, INC., MYLAN BERTEK PHARMACEUTICALS, INC.; MYLAN PHARMACEUTICALS, INC.; AND MYLAN, INC. F/K/A MYLAN LABORATORIES, INC.; AND MYLAN LABORATORIES,** )<br>)<br>)<br>)<br>)<br>)<br>) | **AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| )<br>**Defendants.** )<br>)<br>_____ ) | |

EDWARD COLLINS, individually and as Personal Representative of the Estate of SHEVER COLLINS, deceased, by and through his undersigned attorney, states and alleges as follows:

## BACKGROUND

The original Complaint commencing the underlying suit was filed on November 15, 2010 on behalf of the Estate of Shever Collins for personal injuries sustained as a result of ingesting a prescription drug manufactured, distributed and/or sold by Defendants.  Subsequent to the filing, Letters of Administration were issued on behalf of the Estate in favor of EDWARD COLLINS.  No Answer has been filed by Defendants in the underlying suit and Plaintiff files this Amended Complaint accordingly.

## I. PARTIES

1.     EDWARD COLLINS is an individual of the full age of majority who is a resident and

citizen of Broward County, Florida. EDWARD COLLINS was appointed as the Personal Representative on November 22, 2010 for the Estate of SHEVER COLLINS, Plaintiff, (hereinafter referred to as "Plaintiff").  Plaintiff was an African American individual of the full age of majority who was a resident and citizen of Broward County, Florida.

2.     Plaintiff brings this action for the purpose of recovering all damages allowable by law for personal injuries she suffered as a result the ingestion of a pharmaceutical drug, ALLOPURINOL, manufactured by Defendants.

3.     Defendant UDL Laboratories, Inc., is an Illinois corporation with its headquarters and principal place of business at 1718 Northrock Court, Rockford, IL, 61103.

4.     The agent for service of process for Defendant UDL Laboratories, Inc. is located at 1201 Hays Street, Tallahassee, Florida 32301.  Defendant UDL Laboratories, Inc., is a division of Defendant Mylan.

5.     Defendant Mylan Bertek Pharmaceuticals, Inc., is a West Virginia corporation with its headquarters and principal place of business in Morgantown, West Virginia.

6.     Defendant Mylan Pharmaceuticals, Inc., is a West Virginia corporation with its headquarters and principal place of business in Morgantown, West Virginia.

7.     The agent for service of process for Defendant Mylan Pharmaceuticals, Inc. is located at 1201 Hays Street, Tallahassee, Florida 32301.

8.     Defendant Mylan, Inc., f/k/a Mylan Laboratories is a Pennsylvania corporation with its headquarters in Canonsburg, Pennsylvania

9.     Defendant Mylan Inc., at all times material hereto has and continues to do business in the State of Florida.

10.    Defendant Mylan Laboratories, Inc., is a Pennsylvania corporation with its headquarters

in Pennsylvania.

11.     Defendants UDL Laboratories, Inc., Mylan Bertek Pharmaceuticals, Inc., Mylan Pharmaceuticals, Inc., Mylan, Inc., f/k/a Mylan Laboratories and Mylan Laboratories share the same address and virtually the same officers, board of directors and/or interests and shall be collectively referred to herein as "Defendants" or "Drug Company Defendants".

12.     At all times material hereto, DRUG COMPANY DEFENDANTS were engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, ALLOPURINOL in the State of Florida and in interstate commerce.

13.     At all relevant times, DRUG COMPANY DEFENDANTS were acting by and through its agents, servants and/or employees, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

14.     At all times relevant hereto, DRUG COMPANY DEFENDANTS were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising the pharmaceutical drugs known and/or branded as ALLOPURINOL and/or the generic equivalent, (hereinafter referred to as "ALLOPURINOL" or "the drug") in the State of Florida and in interstate commerce.

15.     At all relevant times, DRUG COMPANY DEFENDANTS did manufacture, create, design, assemble, test, label, sterilize, package, distribute, promote, supply, market, sell, advertise, and/or otherwise distribute in the State of Florida and in interstate commerce

ALLOPURINOL tablets.

16.     At all relevant times, DRUG COMPANY DEFENDANTS sold, delivered and/or distributed such products for ultimate sale and/or use interstate commerce within the United States and the State of Florida by consumers, including Plaintiff.

## II.

## <u>JURISDICTION AND VENUE</u>

17.     Jurisdiction exists as against the defendants, UDL Laboratories, Inc., Mylan Bertek Pharmaceuticals, Inc., Mylan Pharmaceuticals, Inc., Mylan, Inc., f/k/a Mylan Laboratories, and Mylan Laboratories, pursuant to 28 U.S.C. Section 1332, in that the Plaintiff, is a citizen and resident of Baltimore, Maryland; the Defendants, UDL Laboratories, Inc., is incorporated in Illinois; Mylan Bertek Pharmaceuticals, Inc.., is incorporated in West Virginia; Mylan Pharmaceuticals, Inc., is incorporated in West Virginia; Mylan Inc., f/k/a Mylan Laboratories is incorporated in Pennsylvania and Mylan Laboratories is incorporated in Pennsylvania; thus, there is complete diversity of citizenship between the plaintiff and defendants; and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C § 1332.

18.     Venue is proper under 28 U.S.C. § 1391 as the defendant UDL Laboratories, Inc., is a citizen of Illinois and has its principal place of business in Winnebago County, Illinois.

19.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants, because Defendants are present in this state such that requiring an appearance does not offend traditional notions of fair play and substantial justice. This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, the Constitutional requirements of Due Process in that

the Defendants acting through agents or apparent agents, committed one or more of the following:  (1) Defendants transacted business in this state; (2) Defendants owned, used or possessed real estate situated in this state;  (3) Defendants made or performed a contract or promise substantially connected within this state; (4) Defendants do business in and within this state;  and; (5) Requiring Defendants to litigate this claim in this state does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution; and (6) Defendants marketed, promoted, and sold ALLOPURINOL drug products concerned in this litigation in this district and throughout the United States.    Accordingly venue is proper.

### III.

### STATEMENT OF FACTS

20.     This case involves the pharmaceutical prescription drug ALLOPURINOL, which is commonly prescribed to treat gout.

21.     ALLOPURINOL'S principal label, known as the "Package Insert" was developed by the Drug Company Defendants and accompanied all prescription drug products and/or samples. By state and federal law, the labeling is to include accurate information concerning a drug's active and inactive ingredients, clinical pharmacology, indications, usage, contraindications, warnings, precautions and side effects.

22.     Drug Company Defendants failed to fully, truthfully and accurately communicate the risks of ALLOPURINOL, and as a result misled the medical community, physicians, Plaintiff's physician and Plaintiff about the risks of severe cutaneous side effects, including but not limited to Stevens Johnson Syndrome (SJS) and Toxic epidermal necrolysis (TENS) associated with the use of ALLOPURINOL.

23.     Drug Company Defendants caused its Package Insert to be disseminated to Plaintiff's Physicians and other members of the medical community.   Drug Company Defendants' Package Insert minimized the risk of a severe cutaneous reactions and severe side effects described herein, including but not limited to Stevens Johnson Syndrome in patients ingesting ALLOPURINOL, despite available literature that Drug Company Defendants should have found and reported stating a statistically significant higher risk for such reactions.[1]

24.     DRUG COMPANY DEFENDANTS' minimized the risk of SJS and TENS and failed to fully, truthfully and accurately communicate the risks associated with ALLOPURINOL, despite available literature associating severe cutaneous reactions, including, SJS and TENS with the use of ALLOPURINOL, and as a result misled the medical community, physicians, Plaintiff's physician and Plaintiff about the risks of severe side effects described herein, including but not limited to Stevens Johnson Syndrome (SJS) and Toxic epidermal necrolysis (TENS) associated with the use of ALLOPURINOL.

25.     Furthermore, since 2003, Defendants knew or should have known that certain ethnic and racial groups were predisposed to having risk factors to injury due to, among other things, a variation in metabolism rates for pharmaceutical agents.   Defendants knew or should have known that Allopurinol was linked to SJS/TENS based on genetic markers.   The specificity of these associations became common knowledge to companies including Defendants, which are held to the highest of standards as specialists in those fields of science, which relate to the design, testing, use and risks associated with pharmaceutical

---

[1] Roujeau, *et al.*, Severe Adverse Cutaneous Reactions to Drugs, *New England Journal of Medicine*, Vol. 331: 1272-1285, Nov. 1994; Roujeau, *et al.*, Medication Use and the Risk of Stevens-Johnson Syndrome or Toxic Epidermal Necrolysis, *New England Journal of Medicine*, Vol. 333: 1600-1608, Dec. 1995.

drugs.  Again, in 2005, Defendants had knowledge that it should undertake reasonable efforts to perform post-marketing risk analysis regarding ALLOPURINOL.  In fact, DEFENDANTS did nothing including failing to initiate any study regarding the pharmacogenetic relationship between its drug ALLOPURINOL and the increased incidence of cutaneous reactions, including, SJS/TEN among persons with specific alleles and/or polymorphisms.

26.    Despite Defendants knowledge and awareness of the need to account for these associations, however, Defendants; did nothing to identify the potential risk of a certain segment of the population to SJS/TEN from ingesting ALLOPURINOL.

27.    As early as 2001, studies show that the HLA-B*5801 allele was found to be five times more prevalent in African Americans than in Caucasian and Hispanic populations.[2]

28.    In 2005, a seminal study found a strong association between the HLA-B*5801 allele and ALLUPURINOL-induced SJS/TEN.  In fact, the HLA-B*5801 allele was present in 100% of the subjects with ALLOPURINOL-induced SJS/TEN.[3]

29.    Defendants revised its label on or about December 2005, and failed to add any information or warning regarding the true risk and association between ALLOPURINOL and cutaneous reactions, including SJS/TENS and failed to add any information or warning regarding the predisposition of certain populations and females to SJS/TENS from the use of its drug.

[2] Cao K, et al., *Analysis of the Frequencies of HLA-A, B, and C Alleles and Haplotypes in Five Major Ethnicities*. 62 HUM. IMMUNOLOGY 1009-30 (2001).
[3] Hung Si, et al., *HLA-B*5801 Allele as a Genetic Marker for Severe Cutaneous Adverse Reactions Caused by Allopurinol*. 102 PROC. NATL. ACAD. SCI. USA (2005) 6237 (2005).

30.     Defendant failed to update its label from the period of 2005 to present to add any information or warning regarding the predisposition of certain populations and females to SJS/TENS from the use of its drug.

31.     Defendants failed to undertake its duty of conducting post-marketing surveillance and studies in the face of a clear connection between its drug and SJS/TENS.

32.     On or after Plaintiff's ingestion of Defendants' drug, the DRUG COMPANY DEFENDANTS, continued to minimize the risk of SJS and TENS in its ALLOPURINOL label and failed to fully, truthfully and accurately communicate the risks associated with ALLOPURINOL, despite available literature that the incidence of SJS and TENS was higher than the label indicated, and as a result mislead the medical community, physicians, Plaintiff's physician and Plaintiff about the risks of severe side effects described herein, including but not limited to Stevens Johnson Syndrome (SJS) and Toxic epidermal necrolysis (TENS) associated with the use of ALLOPURINOL.

33.     DRUG COMPANY DEFENDANTS aggressively promoted ALLOPURINOL to physicians for use in patients, such as Plaintiff, through medical journal advertisements, use of mass mailings, and direct communications from the DRUG COMPANY DEFENDANTS sales force, as well as other promotional materials including package inserts, physician desk reference, monographs and patient brochures as these materials downplayed the significance of the adverse effects of ALLOPURINOL and the risk of Stevens-Johnson Syndrome and severe cutaneous reactions.

34.     Drug Company Defendants knew there was substantial and mounting evidence of the enormous risk of serious systemic reactions such as hypersensitivity syndrome, SJS/TENS associated with this drug.  Yet, despite the scientific and epidemiological

evidence that would compel Drug Company Defendants to issue warnings to physicians and patients, Drug Company Defendants consciously decided to ignore this pertinent information when it came time to protect the health of patients in the United States from the severe cutaneous adverse events associated with this drug.[4]

35.     Despite accounts of severe cutaneous reactions and severe side effects as described herein including but not limited to SJS/TENS reported directly to the Drug Company Defendants, and reports in the literature, the Drug Company Defendants failed to report the true and accurate risk of said side effects to the Plaintiff's physicians and the medical community and regularly represented in its advertising and promotional messages to said individuals that the risks of cutaneous adverse reactions associated with exposure to this drug was minimal when in fact it was significantly greater.

36.     The ALLOPURINOL manufactured and/or supplied by Drug Company Defendants was defective due to inadequate pre-marketing and post-marketing warnings or instructions because, after Drug Company Defendants knew or should have known of the risk of injury from ALLOPURINOL, Drug Company Defendants failed to provide adequate warnings to Plaintiff's physicians, Plaintiff, physicians and the medical community who prescribed the drug, and to their patients who were the ultimate consumers of the product. Yet despite their inadequate post-marketing warnings and instructions to said persons Drug Company Defendants continued to aggressively promote the product thereby making Drug Company Defendants strictly liable for failure to warn.

37.     On or about July 18, 2006, Plaintiff's physician, Dr. Kenneth Tourgeman, prescribed

---

[4] Mockenhaupt, *et al.*, Stevens-Johnson Syndrome and Toxic Epidermal Necrolysis:  Assessment of Medication Risk with Emphasis on Recently Marketed Drugs. The EuroScar-Study, *Journal of Investigative Dermatology* (2008), 128, 35-44.

ALLOPURINOL tablets to Plaintiff for treatment of gout.

38.  The Decedent's pharmacy, Walgreens at 2104 W. Oakland Park Road, Oakland Park, Florida, specifically filled her Allopurinol tablets with Defendants' product.

39.  Thereafter, Plaintiff ingested Defendants' ALLOPURINOL as prescribed.

40.  On or after July 27, 2006, as a result of her ingestion of ALLOPURINOL, Plaintiff developed rashing, and thereafter was presented to Broward General Medical Center at 1600 South Andrews Avenue, Fort Lauderdale, Florid for medical treatment and was admitted to Broward General Medical Center on July 27, 2006, due to symptoms caused by Allopurinol.

41.  On or about August 21, 2006 Plaintiff was discharged from Broward General Medical Center and continued to suffer from permanent injuries caused by her ingestion of Defendants Allopurinol including but not limited to scarring.  Plaintiff's discharge diagnoses included altered mental status.

42.  Plaintiff died on November 15, 2008. [5]

43.  Plaintiff's representatives learned in or about August of 2009 that Defendants were liable to Plaintiff for causing pain and suffering based on information set forth herein and neither Plaintiff nor her representatives could have reasonably known earlier regarding the deficiencies in Defendants' label.

44.  Upon information and belief, in prescribing the ALLOPURINOL, drug to Plaintiff,

---

[5] No cause of action dies with the person.  All causes of action survive and may be commenced, prosecuted and defended in the name of the person prescribed by law. FLA. STAT. § 46.021;

> "The personal representative will receive no more and no less than the decedent would have received had [she] lived and the action will be subject to the same strengths and weaknesses of the decedent had [she] lived and proceeded to conclude the action."

Levy v. Baptist Hospital of Miami Inc., 210 So.2d 730 (Fla. 3d DCA 1968).

Plaintiff's physicians relied upon information published in the package inserts and/or the Physician's Desk Reference (hereinafter "PDR"); materials and/or labeling otherwise disseminated by the Drug Company Defendants.

45. Under the FDA schema, Drug Company Defendants manufactures, sells, markets and distributes ALLOPURINOL, which was ingested by Plaintiff herein.

46. Plaintiff's ingestion of Drug Company Defendants' ALLOPURINOL caused her injuries.

47. Plaintiff's physicians were not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated by Drug Company Defendants.

48. Drug Company Defendants provided misleading information about the true risks associated with the use of Drug Company Defendants' ALLOPURINOL to the medical community, Plaintiff's Physician, and Plaintiff (and other foreseeable users similarly situated), particularly with respect to females and certain ethnic groups, including Plaintiff.

49. Plaintiff used Drug Company Defendants' pharmaceutical drug ALLOPURINOL without substantial change in condition of the drug between the time of design and manufacture of the drug and the time Plaintiff used the drug as directed.

50. Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of the Drug Company Defendants' dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information concerning the potential effects of exposure to Drug Company Defendants' ALLOPURINOL and the ingestion of ALLOPURINOL to the medical community, physicians, Plaintiff's physician of the drug.

51.     Plaintiff has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages due to the injuries he suffered caused by the ingestion of Drug Company Defendants' ALLOPURINOL.

## IV. ALLEGATIONS

52.     At all relevant times hereto, Drug Company Defendants did not investigate the accuracy of its' ALLOPURINOL drug label.

53.     Drug Company Defendants were negligent in failing to report published articles and overwhelming scientific evidence of increased risks of severe side effects described herein including SJS/TEN associated with ALLOPURINOL therapy to the FDA, healthcare providers or patients in the U.S.  The regulations required them to report these papers, undertake action to add new warnings to the package insert for ALLOPURINOL, and to report any foreign regulatory actions that included new warnings or new safety information for the product.

54.     At all relevant times hereto, Drug Company Defendants did not review the medical literature for its' ALLOPURINOL drug product even though it had a duty to review said literature.

55.     Drug Company Defendants are under a duty to ensure that its' ALLOPURINOL label is accurate.

56.     Under the Code of Federal Regulations, Drug Company Defendants, have a duty to ensure its ALLOPURINOL warnings to the medical community were accurate and adequate; had a duty to conduct post market safety surveillance; to review all adverse drug event information (ADE), and to report any information bearing on the risk and/or

prevalence of side effects caused by ALLOPURINOL, the medical community, Plaintiff's physician and Plaintiff.

57.     Under the Code of Federal Regulations, if Drug Company Defendants discovers information in the course of the fulfillment of its duties as outlined above, Drug Company Defendants must report that information to the medical community, Plaintiff's physician and Plaintiff ALLOPURINOL to ensure that its warnings are continually accurate and adequate.

58.     Drug Company Defendants breached its duty to the medical community, Plaintiff's Physician, Plaintiff, and other foreseeable users similarly situated because it failed to ALLOPURINOL warnings to the medical community, Plaintiff's physician, Plaintiff, other foreseeable users similarly situated were accurate and adequate.

59.     Drug Company Defendants breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to conduct post market safety surveillance of ALLOPURINOL, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of ALLOPURINOL.

60.     Drug Company Defendants breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by ALLOPURINOL, the medical community, Plaintiff's physician and Plaintiff.

61.     Drug Company Defendants breached its duty to the medical community, Plaintiff's

physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning severe side effects as described herein, including but not limited to SJS and TENS, *regardless of the degree of significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of ALLOPURINOL.

62.     If a drug company learns of side effects, risks or misleading and inaccurate information in the ALLOPURINOL label, it must request and/or submit labeling revision for the drug, under the FDA schema.

63.     Drug Company Defendants knew or should have known about the side effects, risks, misleading and inaccurate information contained in its ALLOPURINOL label and knowingly and intentionally withheld that information and or failed to report that information to the medical community, physicians, Plaintiff's physicians and Plaintiff.

64.      At all times material hereto, Drug Company Defendants were aware of the serious side effects caused by ALLOPURINOL including, but not limited to, severe side effects described herein and failed to fulfill its obligation to report and divulge said side effects, and in doing so, mislead the medical community, physicians, Plaintiff's physician and Plaintiff about the safety of the use of the drug.

65.     At all times material hereto, Drug Company Defendants knew or should have known that physicians were **not** aware of or did not fully appreciate the seriousness of the risks associated with use of ALLOPURINOL.

66.     Drug Company Defendants knew or should have known that the package insert use mass mailing language promulgated and distributed.  Defendants did not adequately inform physicians about the risks of severe side effects described herein, and/or SJS or TENS

associated with ALLOPURINOL; yet, said Drug Company Defendants failed to communicate said information to the medical community, Plaintiff's physicians, Plaintiff or other foreseeable users alike, and in doing so, mislead the medical community, physicians, Plaintiff's physician and Plaintiff about the safety of the use of this drug.

67.    Drug Company Defendants knew, or should have known through the exercise of reasonable care, that the labeling for ALLOPURINOL substantially understated the prevalence of the risk of severe cutaneous side effects described herein, including SJS and TENS associated with ALLOPURINOL.

68.    Drug Company Defendants failed to disclose and communicate material safety information regarding the risks of this drug to the medical community, Plaintiff's physician and Plaintiff, knowing that such failure would result in serious injury to patients who were prescribed ALLOPURINOL by a physician who was not aware of the risk of severe skin reactions, SJS and TENS.

69.    Drug Company Defendants misrepresented to physicians, Plaintiff physicians, and to foreseeable users, including Plaintiff that ALLOPURINOL was safe to use and that permanent and severe side effects described herein, SJS and TENS were rare and/or infrequent.

70.    Drug Company Defendants did not disclose or warn physicians about the actual prevalence of known side effects of ALLOPURINOL when ALLOPURINOL is used as marketed by Drug Company Defendants, or when used in Plaintiff, a foreseeable patient.

71.    At the time Drug Company Defendants made the above-described representations, Plaintiff and Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true.

72.     Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Drug Company Defendants' failure to correct false and misleading information it disseminated to physicians, which contained inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the efficacy, safety and potential side effects of ALLOPURINOL.

73.     As a proximate result of the misrepresentation of Drug Company Defendants, Plaintiff sustained the injuries and damages as described in this Complaint.

74.     Drug Company Defendants had an absolute duty to disclose the true facts regarding the safety of ALLOPURINOL to the medical community, to physicians and their patients, pharmacists, and the generic ALLOPURINOL industry, which it negligently and/or intentionally failed to do.

75.     Drug Company Defendants had a duty to ensure that it had a reasonable basis for making the representations regarding the safety, efficacy, risks and benefits of ALLOPURINOL, were accurate and was under at duty to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations, all of which it negligently and/or intentionally failed to do.

76.     Plaintiff would not have suffered Plaintiff's injuries but for the above misrepresentations or omissions of Drug Company Defendants.

77.     Drug Company Defendants' misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's damages.

78.     At all times mentioned in this Complaint, the Drug Company Defendants had a duty to truthfully, accurately and fully disclose information and data which would reflect that the risks of severe skin reactions, SJS and TENS clearly outweighed the utility of the

ALLOPURINOL or its therapeutic benefits to patients.

79.    The Drug Company Defendants were negligent, and breached its duties owed to the medical community, Physicians, Plaintiff's physician and Plaintiff, with respect to ALLOPURINOL in one or more of the following respects:

(a)    Despite knowledge of hazards and knowledge that ALLOPURINOL was frequently prescribed for the use of Plaintiff and other consumers of the drug, Drug Company Defendants failed to accompany the ALLOPURINOL with adequate warnings and instructions regarding the adverse side effects associated with the use of ALLOPURINOL; and

(b)    Drug Company Defendants failed to perform adequate testing on ALLOPURINOL; and

(c)    Despite knowledge of hazards, Drug Company Defendants failed to conduct adequate post-marketing surveillance to determine the safety of the ALLOPURINOL; and

(d)    Despite knowledge of hazards, Drug Company Defendants failed to adequately warn Plaintiff's physicians or Plaintiff that the use of ALLOPURINOL could result in serious side effects, including severe skin reactions, SJS and TENS; and

(e)    Despite the fact that the Drug Company Defendants knew or should have known that ALLOPURINOL caused unreasonably dangerous side effects, Drug Company Defendants failed to adequately disclose the known or knowable risks associated with ALLOPURINOL and willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff's safety or welfare.

(f)    Despite the fact that the Drug Company Defendants knew or should have known that ALLOPURINOL caused an unreasonable an increase risk of severe skin reactions and Drug Company Defendants failed to adequately disclose the known or knowable risks associated with ALLOPURINOL and willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff's safety or welfare.

80.    As a result of the negligence of the Drug Company Defendants, ALLOPURINOL was prescribed to Plaintiff for her use; and was used as prescribed; thereby, causing Plaintiff to sustain reasonably foreseeable serious and permanent damages and injuries as alleged in this complaint.

81.     The negligence of the Drug Company Defendants was a proximate cause of Plaintiff's harm and injuries that Plaintiff has suffered and will continue to suffer.

82.     At all times mentioned in this Complaint, ALLOPURINOL was defective and/or unreasonably dangerous to Plaintiff at the time it left the control of the Drug Company Defendants.

83.     ALLOPURINOL was "defective" and "unreasonably dangerous" when the drug was promoted and entered into the stream of commerce and was received by Plaintiff, in one or more of the following respects:

(a)     At the time ALLOPURINOL left the control of the Drug Company Defendants it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the ALLOPURINOL breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiff's physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seek recovery herein.

(b)     ALLOPURINOL was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time ALLOPURINOL left the possession of the Drug Company Defendants, and that such risks clearly outweighed the utility of ALLOPURINOL or its therapeutic benefits.

(c)     At the time ALLOPURINOL left the control of the Drug Company Defendants the drug possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the ALLOPURINOL left the possession of the Drug Company Defendants. Specifically, although the Drug Company Defendants was well aware that ALLOPURINOL could potentially cause severe side effects described herein, SJS and TENS, warnings of such adverse health conditions were either not included on the package insert for ALLOPURINOL and/or the warnings were inadequate to inform reasonably prudent physicians and foreseeable users of the risks. The Drug Company Defendants failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of ALLOPURINOL.

(d)     The Drug Company Defendants warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would

have provided with respect to the danger.  There were no warnings or instructions that communicate sufficient information on the dangers and safe use of the ALLOPURINOL taking into account the characteristics of the ALLOPURINOL, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases ALLOPURINOL, such as the Plaintiff.

(e)     The ALLOPURINOL manufactured and supplied by the Drug Company Defendants was further defective due to inadequate post-marketing warning or instruction because, after the Drug Company Defendants knew or should have known of the risks of injury from ALLOPURINOL associated with the use as commonly prescribed, Drug Company Defendants failed to promptly respond to and adequately warn about severe skin reactions, SJS and TENS to foreseeable users.

(f)     The ALLOPURINOL manufactured and supplied by the Drug Company Defendants was further defective due to inadequate post-marketing warning or instruction because, after the Drug Company Defendants knew or should have known of the risks of injury from ALLOPURINOL associated with the use as commonly prescribed, Drug Company Defendants failed to promptly respond to and adequately warn about an increased risk as reported in the medical literature for severe skin reactions, SJS and TENS posed to patients, who were foreseeable users of the drug.

84.     The Drug Company Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.

85.     A reasonably competent physician who prescribed ALLOPURINOL and a reasonably competent Plaintiff who consumed ALLOPURINOL would not realize its dangerous condition.

86.     The reasonably foreseeable use of ALLOPURINOL involved substantial dangers not readily recognizable by Plaintiff's physician, who acted as an ordinary reasonable and prudent physicians would, when prescribing ALLOPURINOL to an ordinary, reasonable and prudent patient, like Plaintiff.

87.     The Drug Company Defendants knew that ALLOPURINOL which was to be prescribed by physicians and used by foreseeable users without inspection for defects in

ALLOPURINOL or in any of its components or ingredients and that ALLOPURINOL was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

88.     Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of ALLOPURINOL, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

89.     These defects caused serious injuries to Plaintiff when the ALLOPURINOL was used in its intended and foreseeable manner, and in the manner recommended by the Drug Company Defendants or in a non-intended manner that was reasonably foreseeable.

90.     Drug Company Defendants knew that its warranties regarding safety for the use, would be relied upon by ordinary, reasonable and prudent physicians who would share that information with other physicians in their community and that eventually physicians would come to rely on Drug Company Defendants' express warranties concerning the safety of ALLOPURINOL.

91.     Drug Company Defendants' express warranties about the safety of ALLOPURINOL were false and intentionally and/or negligently misleading.

92.     Drug Company Defendants also knew that the risks of potentially severe side effects described herein, including SJS and TENS when ALLOPURINOL is used were much greater than most physicians realized.  By failing to give adequate warnings about the properties of ALLOPURINOL and the risk of the use that is associated with those properties, the Drug Company Defendants breached implied warranties of merchantability and fitness for the ordinary use of ALLOPURINOL.

93.     At all times mentioned in this Complaint, the Drug Company Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold ALLOPURINOL and prior to the time it was used by Plaintiff, the Drug Company Defendants impliedly warranted to Plaintiff and to Plaintiff physicians that the ALLOPURINOL was of merchantable quality and safe and fit for the use for which it was intended.

94.     Plaintiff relied on the skill and judgment of the Drug Company Defendants in using ALLOPURINOL as prescribed.

95.     ALLOPURINOL was unsafe and unfit for its intended use; was not of merchantable quality, as warranted by the Drug Company Defendants, in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. ALLOPURINOL was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.  As a result, the drug proximately caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

96.     By virtue of Drug Company Defendants' acts and omissions, Drug Company Defendants are liable to Plaintiff because Drug Company Defendants' acts and omissions have proximately caused Plaintiff to suffer permanent injuries.

97.     Plaintiff used ALLOPURINOL, which was provided to her, respectively, in a condition that was substantially the same as the condition in which it was manufactured and sold.

98.     As a result of Drug Company Defendants' actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this

complaint, and that those risks were the direct and proximate result of Drug Company Defendants' acts, omissions, and misrepresentations.

99.    As a direct and proximate result of Drug Company Defendants, the Plaintiff was prevented from pursuing her normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of her ordinary pursuits and enjoyments of life.

100.   Plaintiff is also entitled to any procedural protections deemed necessary and appropriate to protect Plaintiff's legal interests.

101.   Plaintiff is entitled to recovery an award for the injuries caused by the Drug Company Defendants. As a direct and proximate result of the acts and omissions of the Drug Company Defendants, Plaintiff ingested ALLOPURINOL, which was causally related to and contributed to Plaintiff's severe skin reaction and injuries resulting from the adverse reaction caused by Defendants drug.

102.   As a direct and proximate result of the acts and omissions of the Drug Company Defendants, Plaintiff has suffered extreme emotional distress, anguish, physical and mental suffering, and is rendered physically disabled.

103.   As a direct and proximate result of the acts and omissions of the Drug Company Defendants, Plaintiff experienced extreme embarrassment, shame, anguish, anxiety, and has sustained a loss of enjoyment of life.

104.   Plaintiff seeks the recovery for past and future special damages, which includes medication, doctor, rehabilitation, therapy, and other assisted living, nursing care and loss of earning capacity. Plaintiff also seeks damages in the amount to be determined for the wrongful conduct of the Drug Company Defendants.

105.   As a direct and proximate result of the aforesaid acts of and/or omissions by the Drug

Company Defendants, Plaintiff, has:

(a)   Suffered severe and permanent injuries, which he will be forced to endure
      for the remainder of Plaintiff's life;

(b)   Suffered physical impairment and disfigurement; and

(c)   Suffered physical pain and suffering;

(d)   Suffered mental pain and suffering;

(e)   Suffered from loss of enjoyment of life;

(f)   Incurred and will continue to incur various sums of money for past,
      medical expenses associated with monitoring and treating Plaintiff
      injuries; and

(g)   Incurred attorney's fees and expenses of litigation related to this action.

**V.**

**EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

106.   The running of any statute of limitations has been tolled by reason of equitable

circumstances that include Drug Company Defendants' concealment of true risks

associated with Plaintiff's use of ALLOPURINOL as well as Plaintiff's disability and

continuing through the date of her death.

107.   Drug Company Defendants, through failing to disclose a known defect to Plaintiff's

physicians and/or Plaintiff, and negligently misrepresenting their drug as safe for its

intended use, concealed from said individuals the true risks associated with the use of the

drug, and, in doing so, lulled Plaintiff into inaction.

108.   Drug Company Defendants' actions as well as Plaintiff's decreased mental state have

created equitable circumstances in which, Plaintiff and Plaintiff's physicians were unaware,

and   could   not   reasonably   known   or   have   learned   through   due   diligence   of   the

manufacturing defect and that has been exposed to the risks alleged herein and that those risks were a direct and proximate result of Drug Company Defendants' acts and omissions.

109.    Furthermore, Drug Company Defendants are estopped from relying on any statute of limitations because of their concealment of the defective nature of the drug.   Drug Company Defendants were under a duty to disclose the true character, quality, and nature of the drug because this was non-public information over which the Drug Company Defendants have, and continue to have, exclusive control, and because Drug Company Defendants knew or should have known that this information was not available to the Plaintiff or their physicians.  In addition, the Drug Company Defendants is estopped from relying on any statute of limitations because of their concealment of these facts.

110.    Plaintiff had no knowledge that Drug Company Defendants was engaged in the wrongdoing alleged herein.  Because of Drug Company Defendants' failure to disclose, Plaintiff could not have reasonably discovered the wrongdoing at any time prior to the commencement of this action. Plaintiff, nor Plaintiff's physicians, could have possibly determined the nature, extent and identity of related health risks dealing with the defect of Drug Company Defendants' label and reasonably relied on Drug Company Defendants' to disseminate truthful and accurate safety and efficacy information about its drug and warm of the side effects complained of Plaintiff herein.

## COUNT 1

## STRICT PRODUCTS LIABILITY

111.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

112.    At all relevant times the Drug Company Defendants were engaged in the business of

manufacturing, designing, testing, marketing, promoting, distributing, and/or selling ALLOPURINOL.

113. Drug Company Defendants, developed, marketed and distributed ALLOPURINOL to the general public even after learning of the design and manufacturing defects that threatened the intended use of the drug.

114. Drug Company Defendants' ALLOPURINOL was defective and unreasonably dangerous and was expected to and did reach Plaintiff without substantial change in the drug.

115. At all times mentioned in this Complaint, ALLOPURINOL was defective and/or unreasonably dangerous to Plaintiff at the time it left the control of the Drug Company Defendants.

116. Drug Company Defendants knew or should have known through testing, adverse event reporting, or otherwise, that the drug created a high risk of bodily injury and serious harm.

117. The dangerous propensities of ALLOPURINOL were known or scientifically knowable, through appropriate research and testing, to the Drug Company Defendants at the time said Drug Company Defendants distributed, supplied, or sold the drug, and not known to ordinary physicians who would be expected to prescribe the drug for their patients, or their patients.

118. ALLOPURINOL as distributed by the Drug Company Defendants, was defective and unreasonably dangerous inasmuch as the ALLOPURINOL was not accompanied by warnings and instructions that were appropriate and adequate to render the drugs reasonably safe for their ordinary, intended, and reasonably foreseeable uses, in particular the common, foreseeable, and intended use of the products for the ALLOPURINOL therapy.

119. Prior to the manufacturing, sale and distribution of said drug products, Drug Company

Defendants knew that its ALLOPURINOL was in a defective condition as previously described, and knew that those who were prescribed and took the same would experience, and did experience, severe physical, mental and emotional injuries.

120. Drug Company Defendants had prior notice and knowledge from several sources, prior to the date of dispensing of said drug products to Plaintiff that the drug presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such said consumers of said drug were unreasonably subjected to risk of injury from the consumption of said drug.

121. Despite such knowledge, Drug Company Defendants for the purpose of enhancing Drug Company Defendants' profits, knowingly and deliberately failed to warn the public, including Plaintiff, of the extreme risk of physical injury occasioned by said defects inherent in said drug. Drug Company Defendants intentionally proceeded with the manufacturing, the sale and distribution, and marketing of the drug with knowledge that consumers would be exposed to serious danger in order to advance Drug Company Defendants' own pecuniary interest.

122. ALLOPURINOL was "defective" and "unreasonably dangerous" when the product initially was patented, and subsequently when it was promoted and entered into the stream of commerce and was received by Plaintiff, in one or more of the following respects:

(a)     At the time ALLOPURINOL left the control of the Drug Company Defendants it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the product breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiff physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seeks recovery herein.

(b)     ALLOPURINOL was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the

Drug Company Defendants, and that such risks clearly outweighed the utility of the product or its therapeutic benefits.

(c)    At the time ALLOPURINOL left the control of the Drug Company Defendants it possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession of the Drug Company Defendants.  Specifically, although the Drug Company Defendants were well aware that ALLOPURINOL could potentially cause severe side effects described herein, SJS and TENS, and in fact, had significantly greater prevalence and severity of these side effects than revealed by the manufacturer; and/or warnings of such adverse health conditions were either not included on the package insert for these products or they were not adequate to inform reasonably prudent physicians and consumers.  The Drug Company Defendants failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of ALLOPURINOL.

(d)    The Drug Company Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger.  There were no warnings or instructions that communicate sufficient information on the dangers and safe use of the product taking into account the characteristics of the product, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases the product, such as the Plaintiff.

(e)    The ALLOPURINOL manufactured and supplied by the Drug Company Defendants was further defective due to inadequate post-marketing warning or instruction because, after the Drug Company Defendants knew or should have known of the risks of injury from ALLOPURINOL associated with the use as commonly prescribed, they failed to promptly respond to and adequately warn about severe side effects described herein, SJS and TENS.

123.    The Drug Company Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.  A reasonably competent physician who prescribed ALLOPURINOL and a reasonably competent Plaintiff who consumed ALLOPURINOL would not realize its dangerous condition.

124.    The Drug Company Defendants knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of ALLOPURINOL

that caused the damages for which Plaintiff seeks recovery.

125. The reasonably foreseeable use of ALLOPURINOL involved substantial dangers not readily recognizable by the ordinary physician who prescribed ALLOPURINOL or the patient, like Plaintiff, who consumed ALLOPURINOL.

126. The Drug Company Defendants knew that the ALLOPURINOL was to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that ALLOPURINOL was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

127. Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of ALLOPURINOL, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

128. These defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by the Drug Company Defendants and/or in a non-intended manner that was reasonably foreseeable.

WHEREFORE, Plaintiff prays for judgment against Drug Company Defendants, in an amount, which will compensate the Plaintiff for her injuries.

## COUNT 2

## NEGLIGENCE

129. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

130. Drug Company Defendants had a duty to exercise the care of an expert in all aspects of the

formulation, manufacture, compounding, testing, inspection, packaging, labeling, distribution, marketing, and sale of ALLOPURINOL to ensure the safety of its drug and to ensure that the consuming public, including the Plaintiff and Plaintiff physicians and agents, obtained accurate information and instructions for the use of ALLOPURINOL.

131.   As a direct and proximate cause of Drug Company Defendants' conduct, Plaintiff has suffered and will continue to suffer injury, harm, and economic loss as alleged herein, including a permanent and substantial physical disability, and expenses attributable to her injuries caused by Defendants Allopurinol.

132.   The Drug Company Defendants owed a duty toward foreseeable users of ALLOPURINOL including the Plaintiff, to exercise reasonable care to ensure that the ALLOPURINOL it manufactured and/or distributed were reasonably safe for ordinary and intended uses, and specifically, *inter alia*, to ensure through adequate testing, labeling, and otherwise, that physicians who would be likely to prescribe the products for their patients' use were adequately informed as to the potential effects of using the products in ordinary and foreseeable ways, in particular the risks of a severe skin reaction, SJS and/or TENS, inherent in such use.

133.   Drug Company Defendants failed to exercise reasonable care in testing ALLOPURINOL for side effects in ordinary and foreseeable users; and failed to disseminate to physicians information concerning the effects of ALLOPURINOL which was accurate, not misleading, and otherwise adequate to enable physicians to make informed choices concerning the use of ALLOPURINOL.

134.   Drug Company Defendants failed to exercise ordinary care in the manufacture, sale, testing, marketing, quality, assurance, quality control and/or distribution of the drug into the stream

of interstate commerce in that Drug Company Defendants knew or should have known that ALLOPURINOL created a foreseeable high risk of unreasonable, dangerous side effects and health hazards.

135. The dangerous propensities of ALLOPURINOL, as referenced above, were known or scientifically knowable, through appropriate research and testing, to the Drug Company Defendants at the time it distributed, supplied, or sold the products, and not known to ordinary physicians who would be expected to prescribe the drug for Plaintiff and other patients, similarly situated.

136. The information the Drug Company Defendants disseminated to physicians concerning ALLOPURINOL was, in fact, inaccurate, misleading, and otherwise inadequate, as described above.

137. As a proximate result, Plaintiff suffered grievous bodily injuries and consequent economic and other losses when Plaintiff ingested, as prescribed, ALLOPURINOL, which had been developed, manufactured, labeled, marketed, distributed, promoted and/or sold, either directly or indirectly, by Drug Company Defendants through third parties or related entities.

138. The Drug Company Defendants was negligent, and breached duties owed to Plaintiff with respect to ALLOPURINOL in one or more of the following respects:

(a)     Despite knowledge of hazards and knowledge that the product was frequently prescribed for the use, Drug Company Defendants failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of ALLOPURINOL;

(b)     Drug Company Defendants failed to conduct adequate testing;

(c)     Despite knowledge of hazards, Drug Company Defendants failed to conduct adequate post-marketing surveillance to determine the safety of the product;

(d)     Despite knowledge of hazards, they failed to adequately warn Plaintiff physicians or Plaintiff that the use of ALLOPURINOL could result in severe side effects including

but not limited to cutaneous events including but not limited to as SJS and/or TENS; and

(e)     Despite the fact that the Drug Company Defendants knew or should have known that ALLOPURINOL caused unreasonably dangerous side effects, Drug Company Defendants failed to adequately disclose the known or knowable risks associated with ALLOPURINOL as set forth above; Drug Company Defendants willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff safety or welfare.

139.   As a result of the negligence of the Drug Company Defendants, ALLOPURINOL was prescribed to Plaintiff for the use and was used by the Plaintiff, thereby causing Plaintiff to sustain reasonably foreseeable serious and permanent damages and injuries as alleged in this Complaint.

140.   The negligence of the Drug Company Defendants was a proximate cause of Plaintiff's harm and injuries that Plaintiff has suffered and will continue to suffer as previously described.

141.   In the alternative, Drug Company Defendants' acts of omissions and concealment of material facts of the design and manufacturing defects were made with the understanding that patients and physicians would rely upon such statements when choosing Drug Company Defendants' ALLOPURINOL drug.  Furthermore, the economic damages and physical harm caused by Drug Company Defendants' conduct would not have occurred had Drug Company Defendants exercised the high degree of care imposed upon it and Plaintiff therefore pleads the doctrine of *res ipsa loquitur*.

WHEREFORE, Plaintiff prays for judgment against Drug Company Defendants, in an amount, which will compensate the Plaintiff for her injuries.

## COUNT 3

## MISREPRESENTATION BY OMISSION

142.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this
        Complaint with the same force and effect as if fully set forth herein.

143.    Drug Company Defendants misrepresented the soundness and reliability of
        ALLOPURINOL to physicians and the general public through promotional and marketing
        campaigns. It misrepresented that ALLOPURINOL was safe and/or effective when used as
        instructed, when, in fact, it was dangerous to the health of patients. Drug Company
        Defendants continued these misrepresentations for an extended period of time, without
        disclosing material information.

144.    Drug Company Defendants took advantage of the limited opportunity Plaintiff had to
        discover Drug Company Defendants strategic and intentional concealment of the design,
        manufacturing and safety defects in ALLOPURINOL.

145.    At the time Drug Company Defendants promoted the drug at issue as safe and/or effective,
        Drug Company Defendants did not have adequate proof upon which to base such
        representations, and in fact, knew or should have known that drug was dangerous.

146.    Drug Company Defendants concealed these design and manufacturing defects from the
        public by withholding information pertaining to the inherent design, manufacturing and
        safety defects and high risks of a severe side effects as described herein, including SJS
        and/or TENS associated with Drug Company Defendants' ALLOPURINOL drug and,
        instead presented ALLOPURINOL as safe and reliable.

147.    Drug Company Defendants intentional misrepresentations and omissions were to the
        Plaintiff to induce purchase of Drug Company Defendants' ALLOPURINOL drug over

other safer alternative drugs on the market.

148.    Drug Company Defendants knew or should have known of the high risk Plaintiff would encounter by unwittingly agreeing to ingest Drug Company Defendants' defective drug.

149.    Drug Company Defendants failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of ALLOPURINOL and otherwise failed to exercise reasonable care in transmitting information to Plaintiff, Plaintiff's physician, and the public in general.

150.    Drug Company Defendants made the aforesaid representations in the course of Drug Company Defendants business as designers, manufacturers, and distributors of ALLOPURINOL despite having no reasonable basis for their assertion that these representations were true and/or without having accurate or sufficient information concerning the aforesaid representations. Drug Company Defendants were aware that, without such information, it could not accurately make the aforesaid representations.

151.    At the time the aforesaid representations were made, Drug Company Defendants induced Plaintiff and/or Plaintiff's physicians to rely upon such representations.

152.    Plaintiff and/or Plaintiff's physicians, at the time the representations were made, were unaware of their falsity and believed them to be true. In reasonable reliance thereon by Plaintiff and/or Plaintiff's physicians used ALLOPURINOL, and as a result, Plaintiff has suffered, and will continue to suffer, injury, harm and economic loss alleged herein.

153.    As a direct and proximate result of reliance upon Drug Company Defendants misrepresentations, Plaintiff has suffered and will continue to suffer injuries, harm, and economic loss as alleged herein, including a permanent and substantial physical disability, and expenses attributable to this disability.

WHEREFORE, Plaintiff prays for judgment against Drug Company Defendants, in an amount, which will compensate the Plaintiff for her injuries.

## COUNT 4

### NEGLIGENCE PER SE

154. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

155. As set forth above, Drug Company Defendants misrepresented to Plaintiff's physicians, and through them to Plaintiff and members of the general public, that ALLOPURINOL was safe and that severe side effects as described herein including SJS and/or TENS were comparatively rare.  These representations were, in fact, false.  The true facts are that ALLOPURINOL is not safe and is in fact, dangerous to the health and body of Plaintiff, and others similarly situated.

156. Drug Company Defendants made other representations about the safety and efficacy of ALLOPURINOL, and its minimal side effects all as set forth above and incorporated herein by reference.

157. ALLOPURINOL causes severe side effects as described herein including SJS and/or TENS far more frequently than represented, and Drug Company Defendants did not disclose or warn physicians about the actual prevalence of known side effects of ALLOPURINOL.

158.  Drug Company Defendants misrepresented the safety of ALLOPURINOL and withheld warnings of the known side effects of ALLOPURINOL when used as commonly prescribed by physicians as specifically required by 21 C.F.R. § 201.128.

159. At the time Drug Company Defendants made the above described representations, and at the

time Plaintiff and Plaintiff physicians took the actions alleged in this Complaint, Plaintiff and Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true.  In reliance upon the representations, Plaintiff's physicians were induced to and did prescribe ALLOPURINOL as described herein and Plaintiff did use ALLOPURINOL as described herein.

160.    If Plaintiff's physicians had known the actual facts Plaintiff would not have been prescribed ALLOPURINOL and Plaintiff would not have taken ALLOPURINOL.

161.    The reliance of Plaintiff and Plaintiff's physicians upon the representations of Drug Company Defendants was justified because individuals and/or entities that appeared to be in the position to know the true facts made the representations.

162.    As a proximate result of the negligence of Drug Company Defendants, Plaintiff sustained the injuries and damages described herein.

WHEREFORE, Plaintiff prays for judgment against Drug Company Defendants, in an amount, which will compensate the Plaintiff for her injuries.

## COUNT 5

### NEGLIGENT MISREPRESENTATION

163.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

164.    Drug Company Defendants owed a duty to disseminate accurate and adequate information concerning ALLOPURINOL, and to exercise reasonable care to ensure that it did not, in those undertakings, create unreasonable risks of personal injury to others.

165.    Drug Company Defendants disseminated to physicians, through package inserts, and/or the

publication of a PDR monograph, and/or otherwise mediums, information concerning the properties and effects of ALLOPURINOL, with the intention that physicians would rely upon that information when making a decision concerning whether to prescribe ALLOPURINOL for their patients.

166.    Drug Company Defendants as a drug manufacturer and/or distributor, knew or ought to have realized that the manufacturers and/or distributors of drug products, have a duty to ensure that the information contained in the package inserts accompanying their own prescription drug products is accurate, complete, not misleading, and otherwise adequate, and to monitor medical literature and post marketing adverse events and to report any data affecting the safety of the drug to the appropriate agency and/or alert the medical community, Plaintiff's physicians, and through them, Plaintiff.

167.    Drug Company Defendants knew or ought to have realized, specifically, that physicians, in weighing the potential benefits and potential risks of using ALLOPURINOL and in writing prescriptions for "ALLOPURINOL," would rely upon information disseminated to them by the manufacturer of the drug product, regardless of whether the prescriptions might be filled with either the name brand product or generic ALLOPURINOL, and that many patients, in accordance with those prescriptions, would be likely to ingest Defendants' drug product.

168.    Drug Company Defendants knew or ought to have realized that patients receiving prescriptions for ALLOPURINOL written in reliance upon information they disseminated as the manufacturer/distributor of ALLOPURINOL would be placed in peril of grievous personal injury if the information thus disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

169.    Drug Company Defendants failed to exercise reasonable care to ensure that the information

they disseminated to physicians concerning the properties and effects of ALLOPURINOL was accurate and not misleading, and as a result disseminated information to physicians that was negligently and materially inaccurate, misleading, and false.

170. As a proximate and foreseeable result of this negligence on the part of Drug Company Defendants the Plaintiff suffered grievous bodily injury and consequent economic and other loss, as described above, when Plaintiff's physician, in reasonable reliance upon the negligently inaccurate, misleading, and false information disseminated by Drug Company Defendants, and believing the information to be true, prescribed for the Plaintiff the use of ALLOPURINOL and Plaintiff ingested, per those prescriptions, ALLOPURINOL, leading to Plaintiff's injuries.

WHEREFORE, Plaintiff prays for judgment against Drug Company Defendants, in an amount, which will compensate the Plaintiff for her injuries.

**WHEREFORE**, Plaintiffs demand judgment for damages against all Defendants for an amount in excess of $75,000.00, together with interest, costs and attorneys fees.

## COUNT 6

### LOSS OF CONSORTIUM

171. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

172. Plaintiff Edward Collins is and at all times relevant hereto has been the lawful spouse of Plaintiff, and as such, he is entitled to the comfort and enjoyment of her society and services.

173. As a direct and proximate result of the foregoing misconduct of the Defendants, Plaintiff Edward Collins has been deprived of his spouse's companionship, services, solace,

consortium, affection and attention to which he is entitled.

174.     As a result of the foregoing, Plaintiff Edward Collins has been and will continue to be injured and damaged.

Wherefore, Plaintiff demands judgment for all damages available to him under the law as a result of the Defendants' conduct as alleged herein and such other relief as this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

175.     Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated this 10th day of February, 2011.

Respectfully Submitted,

BY:           */s Douglass A. Kreis*
              DOUGLASS A. KREIS
              JUSTIN G. WITKIN
              **AYLSTOCK, WITKIN, KREIS &**
              **OVERHOLTZ, PLLC**
              17 East Main Street, Suite 200
              Pensacola, FL 32502
              Phone:  (850) 202-1010
              Facsimile: (850) 916-7450
              Email:  dkreis@awkolaw.com
                       jwitkin@awkolaw.com

              ATTORNEYS FOR PLAINTIFF

              **ROBERT L. SALIM**
              Attorney At Law
              1901 Texas Street
              Natchitoches, LA 71457
              Phone: (318) 352-5999
              Fax:  (318) 352-5998

              ATTORNEY FOR PLAINTIFF
              *(Pro Hac to be submitted)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of February 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record:

> Francisco Ramos, Jr.
> Spencer H. Silverglate
> CLARKE SILVERGLATE & CAMPBELL, P.A.
> 799 Brickell Plaza, Suite 900
> Miami, Florida 33131
>
> Adam S. Ennis
> JACKSON KELLEY, PLLC
> Three Gateway Center, Suite 1340
> Pittsburgh, Pennsylvania 15222
>
> Heather D. Hovermale
> JACKSON KELLY, PLLC
> 310 W. Burke Street
> Martinsburg, West Virginia 25402

*/s Douglass A. Kreis*
DOUGLASS A. KREIS
Attorney for Plaintiff
