## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Edward Collins, individually and as Personal Representative of the Estate of SHEVER COLLINS, deceased,<br><br>Plaintiff,<br><br>v.<br><br>MYLAN PHARMACEUTICALS, INC.; AND MYLAN, INC. F/K/A MYLAN LABORATORIES, INC.,<br><br>Defendants. | CASE NO. 0:10-cv-62207<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

Edward Collins, individually and as Personal Representative of the Estate of SHEVER

COLLINS, deceased, by and through his undersigned attorney, states and alleges as follows:

### BACKGROUND

The original Complaint commencing the underlying suit was filed on November 15, 2010

on behalf of the Estate of Shever Collins for personal injuries sustained as a result of ingesting a

prescription drug manufactured, distributed and/or sold by Defendants.  Subsequent to the filing,

Letters of Administration were issued on behalf of the Estate in favor of Edward Collins.  No

Answer has been filed by Defendants in the underlying suit and Plaintiff files this Second

Amended Complaint accordingly.

### I. PARTIES

1.      Edward Collins is an individual of the full age of majority who is a resident and citizen of

Broward County, Florida. Edward Collins was appointed as the Personal Representative

on November 22, 2010 for the Estate of SHEVER COLLINS, Plaintiff, (hereinafter

referred to as "Plaintiff").  Plaintiff was an African American individual of the full age of

majority who was a resident and citizen of Broward County, Florida.

2.      Plaintiff brings this action for the purpose of recovering all damages allowable by law for personal injuries she suffered as a result the ingestion of a pharmaceutical drug, allopurinol, manufactured, labeled and sold by Defendants.

3.      Defendant Mylan Pharmaceuticals, Inc. (hereinafter referred to as "Mylan Pharmaceuticals, Inc."), is a West Virginia corporation with its headquarters in West Virginia.

4.      Defendant Mylan, Inc., f/k/a Mylan Laboratories (hereinafter referred to as "Mylan, Inc.") is a Pennsylvania corporation with its headquarters in Pennsylvania.

5.      Defendants Mylan Pharmaceuticals, Inc. and Mylan Inc., at all times material hereto, have and continue to do business in the State of Florida.

6.      Defendant Mylan Pharmaceuticals, Inc.[1] is a subsidiary of parent company Defendant Mylan, Inc. and share the same address and virtually the same officers, board of directors and/or interests and shall be collectively referred to herein as "Defendants" or "Defendants".

7.      At all times material hereto, it is believe that both Defendants were engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor

---

[1] Per Mylan Pharmaceuticals webpage: http://www.mylanpharms.com/

Mylan Pharmaceuticals, a subsidiary of Mylan Inc. based in Morgantown, W.Va., is a market leader in researching, developing, manufacturing, marketing and distributing generic pharmaceutical products in a variety of sophisticated dosage forms. Since 1961, Mylan Pharmaceuticals has held a long-standing reputation for quality, integrity and exemplary service and has maintained its commitment to increasing and protecting consumer access to affordable pharmaceuticals.

in interest, or other related entities, allopurinol in the State of Florida and in interstate commerce.

8.     At all relevant times, Defendants were acting by and through its agents, servants and/or employees, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

9.     At all relevant times, Defendant Mylan, Inc. acted through Mylan Pharmaceuticals, Inc. in committing the acts and omissions alleged herein such that parent, Mylan, Inc. is responsible therefore and liable to Plaintiff.

10.    At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising the pharmaceutical drugs known and/or branded as allopurinol and/or the generic equivalent, (hereinafter referred to as "allopurinol" or "the drug") in the State of Florida and in interstate commerce.

11.    At all relevant times, Defendants did manufacture, create, design, assemble, test, label, sterilize, package, distribute, promote, supply, market, sell, advertise, and/or otherwise distribute in the State of Florida and in interstate commerce allopurinol tablets.

12.    At all relevant times, Defendants sold, delivered and/or distributed such products for ultimate sale and/or use interstate commerce within the United States and the State of Florida by consumers, including Plaintiff.

## II.  <u>JURISDICTION AND VENUE</u>

13.    Jurisdiction exists as against the Defendants Mylan Pharmaceuticals, Inc. and Mylan, Inc., pursuant to 28 U.S.C. Section 1332, in that the Plaintiff, is a citizen and resident of

Baltimore, Maryland; the Defendants, Mylan Pharmaceuticals, Inc., is incorporated in West Virginia; Mylan Inc., f/k/a Mylan Laboratories is incorporated in Pennsylvania and Mylan Laboratories is incorporated in Pennsylvania; thus, there is complete diversity of citizenship between the plaintiff and defendants; and the  amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C § 1332.

14.     Venue is proper under 28 U.S.C. § 1391(a) as a substantial part of the events giving rise to this claim occurred within this district, including the filling of the Plaintiff decedent's prescription for Defendants' drug allopurinol as well as the treating of the Plaintiff decedent's injuries that Plaintiff alleges to have been caused by Defendants' drug allopurinol.

15.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants, because Defendants are present in this state such that requiring an appearance does not offend traditional notions of fair play and substantial justice. This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:  (1) Defendants transacted business in this state; (2) Defendants owned, used or possessed real estate situated in this state;   (3) Defendants made or performed a contract or promise substantially connected within this state; (4) Defendants do business in and within this state;  (5) Requiring Defendants to litigate this claim in this state does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution; and (6) Defendants marketed, promoted, and sold allopurinol

drug products concerned in this litigation in this district and throughout the United States. Accordingly venue is proper.

### III. STATEMENT OF FACTS

16.    This case involves the pharmaceutical prescription drug allopurinol, which is commonly prescribed to treat gout.

17.    The principal allopurinol label, known as the "Package Insert" was developed by the Defendants and accompanied all prescription drug products and/or samples. By state and federal law, the labeling is to include accurate information concerning a drug's active and inactive ingredients, clinical pharmacology, indications, usage, contraindications, warnings, precautions and side effects.

18.    Defendants failed to fully and accurately communicate the risks of allopurinol, and as a result misled the medical community, physicians, Plaintiff's physician and Plaintiff about the risks of including adverse reactions to the skin and tissues, which are known in the scientific community as SCAR events (severe cutaneous adverse reactions) associated with the use of allopurinol.

19.    At the time when Defendants' Package Insert was disseminated to Plaintiff's Physicians, the scientific literature in the medical field documented that allopurinol had a proven risk of inducing SCAR events:

        a.    A study published in the *New England Journal of Medicine* in December 1995 concluded that use of allopurinol for less than or equal to two months posed a relative risk of a SCAR event of 52.[2]  This means that a patient exposed to allopurinol has a 52 times greater risk of suffering from a SCAR event than a patient who is not exposed to the drug.

---

[2] Roujeau, *et al.*, *Medication Use and the Risk of Stevens-Johnson Syndrome or Toxic Epidermal Necrolysis*, NEW ENGLAND JOURNAL OF MEDICINE, Vol. 333: 1605, Dec. 1995; *see* also, Roujeau, *et al.*, Adverse Cutaneous Reactions to Drugs, *New England Journal of Medicine*, Vol. 331: 1272-1285, Nov. 1994.

b.   Yet another major study was published in 2007 that found an increased risk of SCAR events associated with short-term use of allopurinol. The study found a univariate relative risk of such use of 11 and a multivariate relative risk of 17.[3]

c.   Data available from the Health Services Authority document that allopurinol has been implicated in 183 adverse event reports associated with allopurinol from 1993 and May 2000, of which 80% were skin reactions, including SCAR events.

20.   Defendants' minimized the risk of SJS and TEN and failed to fully and accurately communicate the risks associated with allopurinol, despite available literature associating SCAR events with the use of allopurinol.

21.   Furthermore, since 2003, Defendants knew or should have known that certain ethnic and racial groups were predisposed to having risk factors to injury due to, among other things, a variation in metabolism rates for pharmaceutical agents.  By 2005, Defendants knew or should have known that allopurinol was linked to SJS/TEN based on genetic markers. The specificity of these associations became common knowledge to companies including Defendants, which are held to the highest of standards as specialists in those fields of science, which relate to the design, testing, use and risks associated with pharmaceutical drugs.  Again, in 2005, Defendants had knowledge that it should undertake reasonable efforts to perform post-marketing risk analysis regarding allopurinol.  In fact, Defendants did nothing, failing to initiate any study regarding the pharmacogenetic relationship between its drug allopurinol and the increased incidence of cutaneous reactions, including, SCAR events among persons with specific alleles and/or polymorphisms.

---

[3] Mockenhaupt, *Stevens-Johnson Syndrome and Toxic Epidermal Necrolysis: Assessment of Medication Risks within Emphasis on Recently Marketed Drugs*.  The Euro-SCA  study, J. OF INVEST. DERM., Vol. 128, 35-44 (published online Sept. 6, 2007).

22.     As early as 2001, studies show that the HLA-B*5801 allele was found to be five times more prevalent in African Americans than in Caucasian and Hispanic populations.[4]

23.     In 2005, a seminal study found a strong association between the HLA-B*5801 allele and Allopurinol-induced SCAR events.  In fact, the HLA-B*5801 allele was present in 100% of the subjects with allopurinol-induced SCAR events.[5]  As the authors stress, "HLA-B*5801 allele is an important genetic risk factor for [allopurinol-SCAR]," a "life-threatening condition."[6]

24.     Moreover, the authors of the same study recognized that patients with chronic renal insufficiency, like Plaintiff's decedent, are *4.7 times more* at risk for allopurinol-SCAR.[7]

25.     Defendants revised the allopurinol label on or about December 2005, yet failed to add *any* warning of the association between allopurinol and SCAR events, of the predisposition of certain populations to allopurinol-SCAR or of the link between patients with renal insufficiency and allopurinol-SCAR.

26.     Despite Defendants' knowledge and awareness of the need to account for these associations, however, Defendants; did nothing to identify the potential risk of a certain segment of the population to SCAR events from ingesting allopurinol.

---

[4] Cao K, et al., *Analysis of the Frequencies of HLA-A, B, and C Alleles and Haplotypes in Five Major Ethnicities*. 62 HUM. IMMUNOLOGY 1009-30 (2001).  *See also*, Chessman, et. al., *Human Leukocyte Antigen Class I-Restricted Activation of CD8+T Cells Provides the Immunogenetic Basis of a Systemic Drug Hypersensitivity*. IMMUNITY 28, 832 (June 2008) (stating that African Americans are known to have higher frequency of HLA-B5801).

[5] Hung Si, et al., *HLA-B*5801 Allele as a Genetic Marker for Severe Cutaneous Adverse Reactions Caused by allopurinol*. 102 PROC. NATL. ACAD. SCI. USA 102: 4134 (2005).

[6] *Id*.

[7] *Id*. at 4135.

27. Defendants failed to undertake its duty of conducting post-marketing surveillance and studies in the face of a clear connection between its drug and SCAR events, including the association of renal insufficiency with allopurinol-SCAR.

28. Before, during and after Plaintiff's ingestion of Defendants' drug, the Defendants, continued to minimize the risk of SJS and TEN in its allopurinol label and failed to fully and accurately communicate the risks associated with allopurinol, despite available literature that the incidence of SCAR events was higher than the label indicated.

29. Defendants knew there was substantial and mounting evidence of the enormous risk of serious systemic reactions such as allopurinol-SCAR.  Yet, despite the scientific and epidemiological evidence that would compel Defendants to issue warnings to physicians and patients, Defendants consciously and/or negligently decided to ignore this pertinent information when it came time to protect the health of patients in the United States from the severe cutaneous adverse events associated with this drug.

30. Despite accounts of severe cutaneous reactions and severe side effects as described herein including but not limited to SJS/TEN reported directly to the Defendants, and reports in the literature, the Defendants failed to report the true and accurate risk of said side effects to the Plaintiff's physicians and the medical community and regularly represented in its advertising and promotional messages to said individuals that the risks of cutaneous adverse reactions associated with exposure to this drug was minimal when in fact it was significantly greater.

31. The allopurinol manufactured and/or supplied by Defendants was defective due to inadequate pre-marketing and post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injury from allopurinol, Defendants

failed to provide adequate warnings to Plaintiff's physicians, Plaintiff, physicians and the medical community who prescribed the drug, and to their patients who were the ultimate consumers of the product.

32.   On or about July 18, 2006, Plaintiff's physician, Dr. Kenneth Tourgeman, prescribed allopurinol tablets to Plaintiff for treatment of gout.

33.   The Decedent's pharmacy, Walgreens at 2104 W. Oakland Park Road, Oakland Park, Florida, specifically filled her allopurinol tablets with Defendants' product.

34.   Thereafter, Plaintiff ingested Defendants' allopurinol as prescribed.

35.   On or after July 27, 2006, as a result of her ingestion of allopurinol, Plaintiff developed rashing, and thereafter was presented to Broward General Medical Center at 1600 South Andrews Avenue, Fort Lauderdale, Florid for medical treatment and was admitted to Broward General Medical Center on July 27, 2006, due to symptoms caused by allopurinol.

36.   On or about August 21, 2006, Plaintiff was discharged from Broward General Medical Center and continued to suffer from permanent injuries caused by her ingestion of Defendants allopurinol including but not limited to scarring.   Plaintiff's discharge diagnoses included altered mental status rendering her mentally incompetent.

37.   Plaintiff died on November 15, 2008. [8]

38.   Plaintiff's representatives learned in or about August of 2009 that Defendants were liable

---

[8] No cause of action dies with the person.  All causes of action survive and may be commenced, prosecuted and defended in the name of the person prescribed by law. FLA. STAT. § 46.021;
      "The personal representative will receive no more and no less than the decedent would have received had [she] lived and the action will be subject to the same strengths and weaknesses of the decedent had [she] lived and proceeded to conclude the action."
Levy v. Baptist Hospital of Miami Inc., 210 So.2d 730 (Fla. 3d DCA 1968).

to Plaintiff for causing pain and suffering based on information set forth herein and neither Plaintiff nor her representatives could have reasonably known earlier regarding the deficiencies in Defendants' label.

39. Upon information and belief, in prescribing the allopurinol, drug to Plaintiff, Plaintiff's physicians relied upon information published in the package inserts and/or the Physician's Desk Reference (hereinafter "PDR"); materials and/or labeling otherwise disseminated by the Defendants.

40. Under the FDA schema, Defendants manufactures, sells, markets and distributes allopurinol, which was ingested by Plaintiff herein.

41. Plaintiff's ingestion of Defendants' allopurinol caused her injuries.

42. Plaintiff's physicians were not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated by Defendants.

43. Defendants provided misleading information about the true risks associated with the use of Defendants' allopurinol to the medical community, Plaintiff's Physician, and Plaintiff (and other foreseeable users similarly situated), particularly with respect to females and certain ethnic groups, including Plaintiff.

44. Plaintiff used Defendants' pharmaceutical drug allopurinol without substantial change in condition of the drug between the time of design and manufacture of the drug and the time Plaintiff used the drug as directed.

45. Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of the Defendants' dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information

concerning the potential effects of exposure to Defendants' allopurinol and the ingestion of allopurinol to the medical community, physicians, Plaintiff's physician of the drug.

46.    Plaintiff has experienced medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages due to the injuries she suffered caused by the ingestion of Defendants' allopurinol. Decedent's spouse has suffered loss of consortium which, in calculating damages for the same, is continuing in nature.

### IV. ALLEGATIONS

47.    At all relevant times hereto, Defendants did not investigate the accuracy of its' allopurinol drug label.

48.    Defendants were negligent in failing to report published articles and overwhelming scientific evidence of increased risks of severe side effects described herein including SCAR events associated with allopurinol therapy to the FDA, healthcare providers or patients in the U.S. The regulations required them to report these papers, undertake action to add new warnings to the package insert for allopurinol, and to report any foreign regulatory actions that included new warnings or new safety information for the product.

49.    At all relevant times hereto, Defendants did not review the medical literature for its' allopurinol drug product even though it had a duty to review said literature.

50.    Defendants are under a duty to ensure that its' allopurinol label is accurate.

51.    Under the Code of Federal Regulations, Defendants, have a duty to ensure its allopurinol warnings to the medical community were accurate and adequate; had a duty to conduct post market safety surveillance; to review all adverse drug event information (ADE), and to report any information bearing on the risk and/or prevalence of side effects caused by

allopurinol, the medical community, Plaintiff's physician and Plaintiff.

52.     Under the Code of Federal Regulations, if Defendants discovers information in the course of the fulfillment of its duties as outlined above, Defendants must report that information to the medical community, Plaintiff's physician and Plaintiff allopurinol to ensure that its warnings are continually accurate and adequate.

53.     Defendants breached its duty to the medical community, Plaintiff's Physician, Plaintiff, and other foreseeable users similarly situated because it failed to allopurinol warnings to the medical community, Plaintiff's physician, Plaintiff, other foreseeable users similarly situated were accurate and adequate.

54.     Defendants breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to conduct post market safety surveillance of allopurinol, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of allopurinol.

55.     Defendants breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by allopurinol, the medical community, Plaintiff's physician and Plaintiff.

56.     Defendants breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning severe side effects as described herein, including but not limited to SJS and TEN, *regardless of the degree of*

*significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of allopurinol.

57.    If a drug company learns of side effects, risks or misleading and inaccurate information in the allopurinol label, it must request and/or submit labeling revision for the drug, under the FDA schema.

58.    Defendants knew or should have known about the side effects, risks, misleading and inaccurate information contained in its allopurinol label and negligently withheld that information and or failed to report that information to the medical community, physicians, Plaintiff's physicians and Plaintiff.

59.     At all times material hereto, Defendants were aware of the serious side effects caused by allopurinol including, but not limited to, severe side effects described herein and failed to fulfill its obligation to report and divulge said side effects, and in doing so, mislead the medical community, physicians, Plaintiff's physician and Plaintiff about the safety of the use of the drug.

60.    At all times material hereto, Defendants knew or should have known that physicians were **not** aware of or did not fully appreciate the seriousness of the risks associated with use of allopurinol.

61.    Defendants knew or should have known that the package insert use mass mailing language promulgated and distributed.  Defendants did not adequately inform physicians about the risks of severe side effects described herein, and/or SJS or TEN associated with allopurinol; yet, said Defendants failed to communicate said information to the medical community, Plaintiff's physicians, Plaintiff or other foreseeable users alike, and in doing so, mislead the medical community, physicians, Plaintiff's physician and Plaintiff about

the safety of the use of this drug.

62.   Defendants knew, or should have known through the exercise of reasonable care, that the labeling for allopurinol substantially understated the prevalence of the risk of severe cutaneous side effects described herein, including SJS and TEN associated with allopurinol.

63.   Defendants failed to disclose and communicate material safety information regarding the risks of this drug to the medical community, Plaintiff's physician and Plaintiff, knowing that such failure would result in serious injury to patients who were prescribed allopurinol by a physician who was not aware of the risk of severe skin reactions, SJS and TEN.

64.   Defendants negligently misrepresented to physicians, Plaintiff physicians, and to foreseeable users, including Plaintiff that allopurinol was safe to use and that permanent and severe side effects described herein, SJS and TEN were rare and/or infrequent.

65.   Defendants did not disclose or warn physicians about the actual prevalence of known side effects of allopurinol when allopurinol is used as marketed by Defendants, or when used in Plaintiff, a foreseeable patient.

66.   At the time Defendants made the above-described representations, Plaintiff and Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true.

67.   Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' failure to correct false and misleading information it disseminated to physicians, which contained inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the

efficacy, safety and potential side effects of allopurinol.

68.     As a proximate result of the negligence of Defendants, Plaintiff sustained the injuries and damages as described in this Complaint.

69.     Defendants had an absolute duty to disclose the true facts regarding the safety of allopurinol to the medical community, to physicians and their patients, pharmacists, and the generic allopurinol industry, which it negligently failed to do.

70.     Defendants had a duty to ensure that it had a reasonable basis for making the representations regarding the safety, efficacy, risks and benefits of allopurinol, were accurate and was under at duty to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations, all of which it negligently failed to do.

71.     Plaintiff would not have suffered Plaintiff's injuries but for the above negligence of Defendants.

72.     Defendants' negligence was a cause in fact and a proximate cause of Plaintiff's damages.

73.     At all times mentioned in this Complaint, the Defendants had a duty to truthfully, accurately and fully disclose information and data which would reflect that the risks of severe skin reactions, SJS and TEN clearly outweighed the utility of the allopurinol or its therapeutic benefits to patients.

The Defendants were negligent, and breached its duties owed to the medical community, Physicians, Plaintiff's physician and Plaintiff, with respect to allopurinol.

74.     As a result of the negligence of the Defendants, allopurinol was prescribed to Plaintiff for her use; and was used as prescribed; thereby, causing Plaintiff to sustain reasonably

foreseeable serious and permanent damages and injuries as alleged in this complaint.

75.     The negligence of the Defendants was a proximate cause of Plaintiff's harm and injuries that Plaintiff has suffered and will continue to suffer.

76.     At all times mentioned in this Complaint, allopurinol was defective and/or unreasonably dangerous to Plaintiff at the time it left the control of the Defendants.

77.     allopurinol was "defective" and "unreasonably dangerous" when the drug was promoted and entered into the stream of commerce and was received by Plaintiff.

78.     The Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.

79.     A reasonably competent physician who prescribed allopurinol and a reasonably competent Plaintiff who consumed allopurinol would not realize its dangerous condition.

80.     The reasonably foreseeable use of allopurinol involved substantial dangers not readily recognizable by Plaintiff's physician, who acted as an ordinary reasonable and prudent physicians would, when prescribing allopurinol to an ordinary, reasonable and prudent patient, like Plaintiff.

81.     The Defendants knew that allopurinol which was to be prescribed by physicians and used by foreseeable users without inspection for defects in allopurinol or in any of its components or ingredients and that allopurinol was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

82.     Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of allopurinol, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

83.     These defects caused serious injuries to Plaintiff when the allopurinol was used in its intended and foreseeable manner, and in the manner recommended by the Defendants or in a non-intended manner that was reasonably foreseeable.

84.     Defendants knew that its label regarding safety and risks would be relied upon by ordinary, reasonable and prudent physicians who would share that information with other physicians in their community and that eventually physicians would come to rely on Defendants' express warranties concerning the safety of allopurinol.

85.     Defendants' express warranties about the safety of allopurinol were false and negligently misleading.

86.     Defendants also knew that the risks of potentially severe side effects described herein, including SJS and TEN when allopurinol is used were much greater than most physicians realized.  By failing to give adequate warnings about the properties of allopurinol and the risk of the use that is associated with those properties, the Defendants breached implied warranties of merchantability and fitness for the ordinary use of allopurinol.

87.     At all times mentioned in this Complaint, the Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold allopurinol and prior to the time it was used by Plaintiff, the Defendants impliedly warranted to Plaintiff and to Plaintiff physicians that the allopurinol was of merchantable quality and safe and fit for the use for which it was intended.

88.     Plaintiff relied on the skill and judgment of the Defendants in using allopurinol as prescribed.

89.     allopurinol was unsafe and unfit for its intended use; was not of merchantable quality, as warranted by the Defendants, in that it had very dangerous propensities when put to its

intended use and would cause severe injury to the user.  allopurinol was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.  As a result, the drug proximately caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

90.     By virtue of Defendants' acts and omissions, Defendants are liable to Plaintiff because Defendants' acts and omissions have proximately caused Plaintiff to suffer permanent injuries.

91.     Plaintiff used allopurinol, which was provided to her, respectively, in a condition that was substantially the same as the condition in which it was manufactured and sold.

92.     As a result of Defendants' actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

93.     As a direct and proximate result of Defendants, the Plaintiff was prevented from pursuing her normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of her ordinary pursuits and enjoyments of life.

94.     Plaintiff is also entitled to any procedural protections deemed necessary and appropriate to protect Plaintiff's legal interests.

95.     Plaintiff is entitled to recovery an award for the injuries caused by the Defendants. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff ingested

allopurinol, which was causally related to and contributed to Plaintiff's severe skin reaction and injuries resulting from the adverse reaction caused by Defendants drug.

96.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered extreme emotional distress, anguish, physical and mental suffering, and is rendered physically disabled.

97.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff experienced extreme embarrassment, shame, anguish, anxiety, and has sustained a loss of enjoyment of life.

98.    Plaintiff seeks the recovery for past special damages, which includes medication, doctor, rehabilitation, therapy, and other assisted living and nursing care.   Plaintiff also seeks damages in the amount to be determined for the wrongful conduct of the Defendants.

99.    As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendants, Plaintiff, has:

        (a)    Suffered severe and permanent injuries;

        (b)    Suffered physical impairment and disfigurement;

        (c)    Suffered physical pain and suffering;

        (d)    Suffered mental pain and suffering;

        (e)    Suffered from loss of enjoyment of life;

        (f)    Incurred various sums of money for past medical expenses; and

        (g)    Will incur attorney's fees and expenses of litigation related to this action.

Plaintiff's spouse has suffered loss of consortium damages.

## V.  EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

100.    The running of any statute of limitations has been tolled by reason of equitable

circumstances that include Defendants' concealment of true risks associated with Plaintiff's use of allopurinol as well as Plaintiff's disability and continuing through the date of her death.

101.   Defendants, through failing to disclose a known defect to Plaintiff's physicians and/or Plaintiff, and negligently misrepresenting their drug as safe for its intended use, concealed from said individuals the true risks associated with the use of the drug, and, in doing so, lulled Plaintiff into inaction.

102.   Defendants' actions as well as Plaintiff's decreased mental state have created equitable circumstances in which, Plaintiff and Plaintiff's physicians were unaware, and could not reasonably known or have learned through due diligence of the manufacturing defect and that has been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

103.   Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the defective nature of the drug.   Defendants were under a duty to disclose the true character, quality, and nature of the drug because this was non-public information over which the Defendants have, and continue to have, exclusive control, and because Defendants knew or should have known that this information was not available to the Plaintiff or their physicians.   In addition, the Defendants is estopped from relying on any statute of limitations because of their concealment of these facts.

104.   Plaintiff had no knowledge that Defendants was engaged in the wrongdoing alleged herein.   Because of Defendants' failure to disclose, Plaintiff could not have reasonably discovered the wrongdoing at any time prior to the commencement of this action. Plaintiff, nor Plaintiff's physicians, could have possibly determined the nature, extent and identity of

related health risks dealing with the defect of Defendants' label and reasonably relied on Defendants' to disseminate truthful and accurate safety and efficacy information about its drug and warm of the side effects complained of Plaintiff herein.

## COUNT 1

## STRICT PRODUCTS LIABILITY

105. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

106. At all relevant times the Defendants were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling allopurinol.

107. Defendants, developed, marketed and distributed allopurinol to the general public even after learning of the design and manufacturing defects that threatened the intended use of the drug.

108. Defendants' allopurinol was defective and unreasonably dangerous and was expected to and did reach Plaintiff without substantial change in the drug.

109. At all times mentioned in this Complaint, allopurinol was defective and/or unreasonably dangerous to Plaintiff at the time it left the control of the Defendants.

110. Defendants knew or should have known through testing, adverse event reporting, or otherwise, that the drug created a high risk of bodily injury and serious harm.

111. The dangerous propensities of allopurinol were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time said Defendants distributed, supplied, or sold the drug, and not known to ordinary physicians who would be expected to prescribe the drug for their patients, or their patients.

112. allopurinol as distributed by the Defendants, was defective and unreasonably dangerous

inasmuch as the allopurinol was not accompanied by warnings and instructions that were appropriate and adequate to render the drugs reasonably safe for their ordinary, intended, and reasonably foreseeable uses, in particular the common, foreseeable, and intended use of the products for the allopurinol therapy.

113. Prior to the manufacturing, sale and distribution of said drug products, Defendants knew that its allopurinol was in a defective condition as previously described, and knew that those who were prescribed and took the same would experience, and did experience, severe physical, mental and emotional injuries.

114. Defendants had prior notice and knowledge from several sources, prior to the date of dispensing of said drug products to Plaintiff that the drug presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such said consumers of said drug were unreasonably subjected to risk of injury from the consumption of said drug.

115. Despite such knowledge, Defendants for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to warn the public, including Plaintiff, of the extreme risk of physical injury occasioned by said defects inherent in said drug. Defendants negligently proceeded with the manufacturing, the sale and distribution, and marketing of the drug with knowledge that consumers would be exposed to serious danger in order to advance Defendants' own pecuniary interest.

116. allopurinol was "defective" and "unreasonably dangerous" when the product initially was patented, and subsequently when it was promoted and entered into the stream of commerce and was received by Plaintiff, in one or more of the following respects:

(a)     At the time allopurinol left the control of the Defendants it was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because the product breached an express warranty or failed to

conform to other expressed factual representations upon which Plaintiff physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiff seeks recovery herein.

(b)     allopurinol was not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time the product left the possession of the Defendants, and that such risks clearly outweighed the utility of the product or its therapeutic benefits.

(c)     At the time allopurinol left the control of the Defendants it possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time the product left the possession of the Defendants. Specifically, although the Defendants were well aware that allopurinol could potentially cause severe side effects described herein, SJS and TEN, and in fact, had significantly greater prevalence and severity of these side effects than revealed by the manufacturer; and/or warnings of such adverse health conditions were either not included on the package insert for these products or they were not adequate to inform reasonably prudent physicians and consumers.  The Defendants failed to use reasonable care to provide an adequate warning of these dangerous characteristics to handlers and users of allopurinol.

(d)     The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger.   There were no warnings or instructions that communicate sufficient information on the dangers and safe use of the product taking into account the characteristics of the product, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases the product, such as the Plaintiff.

(e)     The allopurinol manufactured and supplied by the Defendants was further defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from allopurinol associated with the use as commonly prescribed, they failed to promptly respond to and adequately warn about severe side effects described herein, SJS and TEN.

117.    The Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.   A reasonably competent physician who prescribed allopurinol and a reasonably competent Plaintiff who consumed allopurinol would not realize its dangerous condition.

118.    The Defendants knew or in light of reasonably available scientific knowledge should have

known about the danger associated with use of allopurinol that caused the damages for which Plaintiff seeks recovery.

119. The reasonably foreseeable use of allopurinol involved substantial dangers not readily recognizable by the ordinary physician who prescribed allopurinol or the patient, like Plaintiff, who consumed allopurinol.

120. The Defendants knew that the allopurinol was to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that allopurinol was not properly prepared nor accompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

121. Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of allopurinol, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

122. These defects caused serious injuries to Plaintiff when the product was used in its intended and foreseeable manner, and in the manner recommended by the Defendants and/or in a non-intended manner that was reasonably foreseeable.

WHEREFORE, Plaintiff prays for judgment against Defendants, in an amount, which will compensate the Plaintiff for her injuries.

## COUNT 2

## NEGLIGENCE

123. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

124.   Defendants had a duty to exercise the care of an expert in all aspects of the formulation, manufacture, compounding, testing, inspection, packaging, labeling, distribution, marketing, and sale of allopurinol to ensure the safety of its drug and to ensure that the consuming public, including the Plaintiff and Plaintiff physicians and agents, obtained accurate information and instructions for the use of allopurinol.

125.   As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer injury, harm, and economic loss as alleged herein, including a permanent and substantial physical disability, and expenses attributable to her injuries caused by Defendants allopurinol.

126.   The Defendants owed a duty to ensure that the label contained sufficient information and warnings to physicians which would prompt a reasonable physician to both determine and evaluate a patients' past medical history, including presence of chronic renal insufficiency, and the presence of HLA-B*5801.

127.   The Defendants owed a duty toward foreseeable users of allopurinol including the Plaintiff, to exercise reasonable care to ensure that the allopurinol it manufactured and/or distributed were reasonably safe for ordinary and intended uses, and specifically, *inter alia*, to ensure through adequate testing, labeling, and otherwise, that physicians who would be likely to prescribe the products for their patients' use were adequately informed as to the potential effects of using the products in ordinary and foreseeable ways, in particular the risks of a severe skin reaction, SJS and/or TEN, inherent in such use.

128.   Defendants failed to exercise reasonable care in testing allopurinol for side effects in ordinary and foreseeable users; and failed to disseminate to physicians information concerning the effects of allopurinol which was accurate, not misleading, and otherwise

adequate to enable physicians to make informed choices concerning the use of allopurinol.

129.    Defendants failed to exercise ordinary care in the manufacture, sale, testing, marketing, quality, assurance, quality control and/or distribution of the drug into the stream of interstate commerce in that Defendants knew or should have known that allopurinol created a foreseeable high risk of unreasonable, dangerous side effects and health hazards.

130.    The dangerous propensities of allopurinol, as referenced above, were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time it distributed, supplied, or sold the products, and not known to ordinary physicians who would be expected to prescribe the drug for Plaintiff and other patients, similarly situated.

131.    The information the Defendants disseminated to physicians concerning allopurinol was, in fact, inaccurate, misleading, and otherwise inadequate, as described above.

132.    As a proximate result, Plaintiff suffered grievous bodily injuries and consequent economic and other losses when Plaintiff ingested, as prescribed, allopurinol, which had been developed, manufactured, labeled, marketed, distributed, promoted and/or sold, either directly or indirectly, by Defendants through third parties or related entities.

133.    The Defendants was negligent, and breached duties owed to Plaintiff with respect to allopurinol in one or more of the following respects:

(a)     Despite knowledge of hazards and knowledge that the product was frequently prescribed for the use, Defendants failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of allopurinol;

(b)     Defendants failed to conduct adequate testing;

(c)     Despite knowledge of hazards, Defendants failed to conduct adequate post-marketing surveillance to determine the safety of the product;

(d)     Despite knowledge of hazards, they failed to adequately warn Plaintiff physicians or Plaintiff that the use of allopurinol could result in severe side effects including but

not limited to cutaneous events including but not limited to as SJS and/or TEN; and

(e)     Despite the fact that the Defendants knew or should have known that allopurinol caused unreasonably dangerous side effects, Defendants failed to adequately disclose the known or knowable risks associated with allopurinol as set forth above; Defendants willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of Plaintiff safety or welfare.

134.    As a result of the negligence of the Defendants, allopurinol was prescribed to Plaintiff for the use and was used by the Plaintiff, thereby causing Plaintiff to sustain reasonably foreseeable serious and permanent damages and injuries as alleged in this Complaint.

135.    The negligence of the Defendants was a proximate cause of Plaintiff's harm and injuries that Plaintiff has suffered and will continue to suffer as previously described.

136.    In the alternative, Defendants' acts of omissions and concealment of material facts of the design and manufacturing defects were made with the understanding that patients and physicians would rely upon such statements when choosing Defendants' allopurinol drug. Furthermore, the economic damages and physical harm caused by Defendants' conduct would not have occurred had Defendants exercised the high degree of care imposed upon it and Plaintiff therefore pleads the doctrine of *res ipsa loquitur*.

WHEREFORE, Plaintiff prays for judgment against Defendants, in an amount, which will compensate the Plaintiff for her injuries.

## COUNT 3

## LOSS OF CONSORTIUM

137.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

138.    Plaintiff Edward Collins is and at all times relevant hereto has been the lawful spouse of Plaintiff, and as such, he is entitled to the comfort and enjoyment of her society and

services.

139.    As a direct and proximate result of the foregoing misconduct of the Defendants, Plaintiff Edward Collins has been deprived of his spouse's companionship, services, solace, consortium, affection and attention to which he is entitled.

140.    As a result of the foregoing, Plaintiff Edward Collins has been and will continue to be injured and damaged.

Wherefore, Plaintiff demands judgment for all damages available to him under the law as a result of the Defendants' conduct as alleged herein and such other relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

141.    Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated this 18th day of April, 2011.

Respectfully Submitted,

BY:        _/s Douglass A. Kreis_
DOUGLASS A. KREIS
JUSTIN G. WITKIN
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone:  (850) 202-1010
Facsimile: (850) 916-7450
Email:  dkreis@awkolaw.com
            jwitkin@awkolaw.com

ATTORNEYS FOR PLAINTIFF

**ROBERT L. SALIM**
Attorney At Law
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax:  (318) 352-5998

ATTORNEY FOR PLAINTIFF
*(Pro Hac to be submitted)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of April, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record:

> Francisco Ramos, Jr.
> Spencer H. Silverglate
> CLARKE SILVERGLATE & CAMPBELL, P.A.
> 799 Brickell Plaza, Suite 900
> Miami, Florida 33131
>
> Adam S. Ennis
> JACKSON KELLEY, PLLC
> Three Gateway Center, Suite 1340
> Pittsburgh, Pennsylvania 15222
>
> Heather D. Hovermale
> JACKSON KELLY, PLLC
> 310 W. Burke Street
> Martinsburg, West Virginia 25402

*/s Douglass A. Kreis*
DOUGLASS A. KREIS
Attorney for Plaintiff
